# United States Court of Appeals
## For the First Circuit

No. 11-1088

AIR SUNSHINE, INC.; MIRMOHAMMAD ADILI;
AIR SUNSHINE DE P.R., INC.,

Plaintiffs, Appellees,

v.

STEPHEN M. CARL,

Defendant, Appellant,

YVETTE HAU-LEPERA; SERGIO LÓPEZ,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Marcos E. López, U.S. Magistrate Judge]

Before

Lynch, Chief Judge,
Torruella and Stahl, Circuit Judges.

Kelsi Brown Corkran, Appellate Staff Attorney, with whom Tony West, Assistant Attorney General, Rosa E. Rodríguez-Vélez, United States Attorney, and Barbara L. Herwig, Appellate Staff Attorney, were on brief, for appellant.
Ronnie Adili, with whom Vincent F. Vaccarella, Vincent F. Vaccarella, P.A., Carlos J. Morales Bauzá, and Rosselló & Morales, CSP, were on brief, for appellees.

December 2, 2011

**LYNCH**, **Chief Judge**.  This is an appeal from a magistrate judge's denial of a motion to dismiss two claims in a complaint against a federal employee on qualified immunity grounds under Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).

The plaintiffs -- Air Sunshine, an airline based in Florida and Puerto Rico, and its owner, Mirmohammad Adili (collectively, Air Sunshine) -- brought suit against a group of federal defendants, including Stephen Carl, a Principal Maintenance Inspector employed by the Federal Aviation Administration (FAA), asserting Bivens claims and other causes of action.  See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  Air Sunshine alleged that the defendants intentionally and improperly delayed various certifications and inspections, that these delays amounted to a violation of constitutional rights, and that the delays substantially destroyed Air Sunshine's business. Air Sunshine sought $7 million in compensatory damages from the federal defendants.

The defendants moved to dismiss the complaint on, among other grounds, qualified immunity.  The magistrate judge[1] granted the motion with respect to most of Air Sunshine's claims, and those dismissals are not the subject of this appeal.  See Air Sunshine,

---

[1]  At the initial status conference, the issue of referring the case to a magistrate judge was raised.  See Fed. R. Civ. P. 16(c)(2)(H).  Both parties consented to having the case tried before a magistrate judge and the case was assigned to the magistrate judge.  See Fed. R. Civ. P. 73.

Inc. v. Carl, Nos. 09-2019, 09-2039, 09-2041, 2010 WL 4861457, at *14 (D.P.R. Nov. 30, 2010). However, the magistrate judge denied the motion to dismiss with respect to two Bivens claims against Carl.[2] Id. These claims assert that Carl's actions violated Air Sunshine's procedural due process rights and were in retaliation for protected First Amendment activity. Id. Carl appealed.

We hold that the allegations in the complaint underlying Air Sunshine's remaining claims are insufficient to meet the Iqbal pleading standard so as to deny qualified immunity, reverse, and direct entry of judgment for Carl.

I.

In an interlocutory appeal from the denial of qualified immunity on a motion to dismiss on the pleadings, we accept the well-pleaded facts of the plaintiff's claim as alleged in the complaint. Soto-Torres v. Fraticelli, 654 F.3d 153, 156 (1st Cir. 2011) (citing Iqbal, 129 S. Ct. at 1950). However, "[w]e do not accept the complaint's legal conclusions or 'naked assertion[s] devoid of further factual enhancement.'" Id. (second alteration in original) (quoting Iqbal, 129 S. Ct. at 1949).

The allegations in the complaint arise from three sets of facts: the mandatory proving test process for three recently leased

---

[2] The magistrate judge also denied the motion to dismiss with respect to a second defendant, Sergio López. Air Sunshine, Inc. v. Carl, Nos. 09-2019, 09-2039, 09-2041, 2010 WL 4861457, at *14 (D.P.R. Nov. 30, 2010). However, Air Sunshine has since voluntarily dismissed its claims against López.

-3-

SAAB 340 aircraft, the inspection required for Air Sunshine's fleet of aging C402 aircraft, and the issuance of a ferry permit needed to transport one of Air Sunshine's aircraft for repairs. The inspection of the older C402 aircraft is at the heart of the procedural due process claims. While unclear from the decision of the magistrate judge, it appears that all three sets of facts are involved in the First Amendment retaliation claim.

A.        SAAB 340 Aircraft Proving Tests

In late 2005, Air Sunshine entered into a lease to operate three SAAB 340 aircraft, to expand its business. The FAA requires aircraft proving runs to take place before certain types of aircraft may be used in operations.[3] As to the SAAB 340 aircraft, this had not happened by July 2008. All of this happened before there was any alleged involvement by Carl with respect to Air Sunshine. In August 2008, Carl, the Principal Maintenance Inspector in the FAA's South Florida Flight Standards District

_____

[3] See, e.g., 14 C.F.R. § 135.145(a) (prohibiting certificate holders from operating an aircraft for which two pilots are required "if it has not previously proved such an aircraft in operations under this part in at least 25 hours of proving tests acceptable to the Administrator"). "Proving tests consist of a demonstration of the applicant's ability to operate and maintain an aircraft new to the operator's fleet, or the applicant's ability to conduct a particular kind of operation . . . ." FAA Order 8900.1 ¶ 3-2287(A) (2008). While the complaint refers to this as a "certification" process, the FAA handbook explains that proving tests are distinct from "aircraft certification tests, which are tests conducted by the aircraft manufacturer to demonstrate the airworthiness of the aircraft." Id. ¶ 3-2287(B). The FAA handbook is located on the FAA's website, at http://fsims.faa.gov/PICResults.aspx?mode=EBookContents.

Office, was assigned to Air Sunshine's matters. Carl met with Air Sunshine on October 8, 2008, and explained that the proving runs would not take place until errors in Air Sunshine's operating manual were corrected. Air Sunshine alleges that the errors in the operating manual were outside Carl's responsibilities.

During this meeting, Carl mentioned that Yvette Hau-Lepera, another FAA employee, was a good friend of his. Adili responded by stating that Hau-Lepera "had done Air Sunshine no justice," and the certification for which Hau-Lepera was responsible was mired in unexplained delays. The First Amendment retaliation claim stems from this conversation. Air Sunshine says the further actions and delays were a result of their criticism to Carl of the work of FAA inspector Hau-Lepera.

A week after this meeting, Carl emailed Air Sunshine, informing them that Carl needed an extra week. At the same time, Carl sent a letter to Air Sunshine which, Air Sunshine alleges, "contained numerous questions Air Sunshine had already been asked and had answered." Air Sunshine asserts that "this letter was intended to intimate [sic] them, and to interpose yet further delays" in the proving runs. Air Sunshine responded to the letter on October 20, 2008, answering the questions and raising concerns about the delay in holding the proving runs. Air Sunshine contacted Carl on November 3, stating that it would be very difficult for Air Sunshine to wait until November 13 to have a

meeting to address the concerns raised in the October 20th letter. Carl responded by stating that previous FAA inspectors were incorrect, and Air Sunshine was not in compliance with FAA regulations.

Air Sunshine attended a meeting with FAA employees, including Carl, on November 14 and left with the impression that proving runs would take place before the end of 2008. However, on November 24, Carl's assistant sent an email, signed by Carl, stating that Air Sunshine's most recent submission to the FAA "lacked procedural format." On December 22, Carl emailed Air Sunshine, explaining that Carl could not simultaneously accomplish the SAAB proving tests and the C402 inspections, and that Air Sunshine had to choose between them. On March 5, 2009, a consultant hired by Air Sunshine sent a letter to Carl emphasizing Air Sunshine's economic hardship. The certification of the SAAB 340 aircraft never took place "and Air Sunshine's business was substantially destroyed."

B.      Aging C402 Aircraft Inspection

As of July 2006, Air Sunshine had operated a fleet of C402 aircraft for 24 years, and those aircraft needed inspection to be in compliance with 14 C.F.R. § 135.422. That provision requires certain aging planes to be inspected before they may continue in

service.[4]  The same month, Air Sunshine requested FAA inspection and certification.

The period in which this inspection needed to take place expired on December 8, 2008.  Air Sunshine alleges it made unspecified "repeated pleas" for inspection and received an unspecified "promise" to extend the deadline for the inspection to take place.  No details are alleged, and it is not alleged that Carl, who had no responsibility as to Air Sunshine before August 2008, was in any way involved.

On December 8, 2008, Air Sunshine's scheduling authority automatically expired.  The next day, Carl informed Air Sunshine that an extension was not possible and that Air Sunshine had lost its authority to schedule operations.  Still, on December 11, 2008, Carl told Air Sunshine that his assistant would conduct the inspection.  On December 16, however, Carl told Air Sunshine that his assistant could not perform the inspection of the fleet alone, and instead a team would be needed.  On January 20, 2009, Air Sunshine informed Carl that it had hired a former FAA inspector to

---

[4]  This regulation precludes owners of multiengine aircraft that exceed fourteen years in service and contain nine or fewer passenger seats from operating their aircraft in scheduled operations unless "the [FAA] Administrator has completed the aging airplane inspection and records review required by this section." 14 C.F.R. § 135.422(a), (b).  A "scheduled operation" is "any common carriage passenger-carrying operation for compensation or hire conducted by an air carrier or commercial operator for which the certificate holder or its representative offers in advance the departure location, departure time, and arrival location."  Id. § 110.2.

complete the inspection. However, Carl refused to accept the inspection, pending approval of a revision to a manual; Air Sunshine claims no such revision was required, and presumably it did not submit one. As a result, the inspection was never completed, and Air Sunshine's loss of scheduling authority "resulted in the consequent loss of Air Sunshine's ability to bid for government contracts."

C.      Ferry Permit

On August 25, 2008, Air Sunshine emailed Carl requesting a permit to ferry one of Air Sunshine's aircraft to Florida for repairs. Three days later, Carl stated that FAA regulations did not permit ferrying of the aircraft at issue. Air Sunshine alleges that this was an incorrect statement of law. Carl continued to refuse issuance of the permit until October 2008, when he inspected the aircraft. As a result of this delay, "Air Sunshine lost revenue of $45,000 per month during the period when the aircraft remained unrepaired, and incurred corrosion damage to its aircraft."

## II.

The denial of a motion to dismiss on qualified immunity grounds is immediately appealable as a final decision under 28 U.S.C. § 1291. See Iqbal, 129 S. Ct. at 1946; Soto-Torres, 654 F.3d at 157. We review de novo the magistrate judge's denial of

Carl's motion to dismiss the complaint on qualified immunity grounds.[5]  Soto-Torres, 654 F.3d at 157.

A.          Qualified Immunity Standard

Qualified immunity "provides defendant public officials an immunity from suit and not a mere defense to liability." Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009).  "[T]he qualified immunity inquiry is a two-part test.  A court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Id. at 268-69 (quoting Pearson v. Callahan, 129 S. Ct. 808, 815 (2009)).  "A right is clearly established only if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Soto-Torres, 654 F.3d at 158 (quoting Brosseau v. Haugen, 543 U.S. 194, 199 (2004)).

B.          Pleading Standard Under *Iqbal*

The first prong of the immunity analysis requires that a claim of violation of a constitutional right be stated.  Air Sunshine's claims fail on this prong.

---

[5]  "[A]n appeal from a judgment entered at a magistrate judge's direction may be taken to the court of appeals as would any other appeal from a district court judgment." Fed. R. Civ. P. 73(c).

For a complaint alleging a recognized Bivens claim to survive a motion to dismiss, the plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S. Ct. at 1948. The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This is not a "probability requirement," but it does require "more than a sheer possibility that a defendant acted unlawfully." Id.

In assessing whether the Iqbal standard is met, a court will "accept as true all of the allegations contained in [the] complaint." Id. However, this tenet does not apply to "statements in the complaint that merely offer legal conclusions couched as facts or are threadbare or conclusory." Soto-Torres, 654 F.3d at 158. Similarly, a court does not accept as true allegations that "while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'" Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011) (quoting Twombly, 550 U.S. at 557 n.5).

C.    Air Sunshine's Claims

Only two of Air Sunshine's claims remain on appeal: (1) a Bivens claim alleging that the C402 inspection process amounted to a deprivation of Air Sunshine's property without due process, in contravention of the procedural Due Process Clause of the Fifth Amendment; and (2) a Bivens claim that the delays and other actions of Carl with respect to all three sets of facts were carried out in retaliation for Air Sunshine's complaints regarding Hau-Lepera during the October 8 meeting, in contravention of the First Amendment.  Air Sunshine, 2010 WL 4861457, at *10.

1.    The Procedural Due Process Claim

Carl argues the complaint fails even to state a procedural a due process claim, much less a claim which would overcome qualified immunity.  We agree.

We bypass the question of whether Air Sunshine can even bring a procedural due process claim under Bivens.  Bivens claims are implied from the Constitution, and such implied causes of action are disfavored.  Iqbal, 129 S. Ct. at 1947-48.  While the Supreme Court has extended Bivens to the Due Process Clause, it has only done so in the context of "[t]he equal protection component" of that clause.  Davis v. Passman, 442 U.S. 228, 235 (1979).  Even assuming a properly stated procedural due process claim is cognizable under Bivens, the complaint does not state a claim upon which relief can be granted.

-11-

To state a valid procedural due process claim, a plaintiff must (1) "identify a protected liberty or property interest," and (2) "allege that the defendants . . . deprived [him] of that interest without constitutionally adequate process." González-Droz v. González-Colón, 660 F.3d 1, 13 (1st Cir. 2011) (second alteration in original) (quoting Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 56 (1st Cir. 2006)) (internal quotation mark omitted).

Because Air Sunshine fails to allege a deprivation by Carl, we do not reach the assertion that there is a protected property interest in the outcome of the inspection process.

The complaint alleges that the deadline for Air Sunshine to complete the C402 inspection process was December 8, 2008.[6] On that date, Air Sunshine lost its authority to schedule operations. The only specific actions the complaint alleges Carl took with respect to the inspection process all occurred after this date, so there was no plausible causal connection alleged.

Beyond that, the specific allegations regarding Carl do not state a valid claim for other reasons. The only specific allegations contained in the complaint are that (1) Carl stated that an extension of the inspection deadline "was not possible,"

---

[6] The relevant regulation indicates that the inspection needed to take place "no later than December 4, 2008." 14 C.F.R. § 135.422(b)(2). It is unclear from where the complaint derives the December 8 deadline, but we work with Air Sunshine's date.

-12-

(2) Carl indicated that his assistant could conduct the inspection of the fleet alone, but five days later stated that a team would be required, and (3) Carl refused to accept the inspection results of the former FAA inspector hired by Air Sunshine pending an approval of a revision to certain manuals.

The complaint does not allege that Carl made the decision, or even had the authority to make the decision, regarding whether to grant the extension. This failure to make personal allegations is alone fatal. Importantly, and independently, the relevant regulation provides that an extension "may" be made "[i]n the event of an unforeseen scheduling conflict for a specific airplane." 14 C.F.R. § 135.422(c). The complaint does not plead any unforseen scheduling conflict, so there is no plausible basis to infer that the regulation even granted discretion to anyone to allow an extension.[7] Further, the regulation's use of the word "may" means the decision to grant an extension is discretionary, and thus not subject to a Due Process Clause challenge. See Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005) ("[A] benefit is not a protected entitlement if government officials may grant or

---

[7] The relevant FAA handbook section provides that the extension may be approved "provided the operator presents written justification for the scheduling conflict." FAA Order 8900.1 ¶ 6-2489(A)(2) (2010). The complaint does not allege that Air Sunshine complied with this requirement.

-13-

deny it in their discretion."). For these reasons as well, the allegations against Carl fail.[8]

This result does not change with the remaining allegations about Carl's assistant or his failure to accept Air Sunshine's proffered inspection results. Carl's determination that a team would be needed to conduct an inspection, rather than his assistant alone, was within his authority and cannot support a procedural due process claim.[9]

The bald allegation that Carl refused to accept the inspection Air Sunshine had conducted, pending revision of certain manuals, which Air Sunshine had been waiting for Carl to approve, also does not state a procedural due process claim. The complaint does not state when the private inspection took place, when the results were submitted to Carl, when Carl refused to accept the inspection, why his refusal was improper, and provides no other

---

[8] It is not clear that an extension could have been approved by anyone. The FAA handbook explains that "[e]xtensions may only be approved for the seven-year repetitive inspection intervals. In all cases, the initial compliance threshold to the applicable rule must be met." FAA Order 8900.1 ¶ 6-2489(A)(2) (2010). The complaint indicates that Air Sunshine's craft needed the initial inspection required after fourteen years of operation, rather than the subsequent seven-year interval inspections for which extensions may be granted.

[9] The FAA handbook contemplates that multiple individuals might be needed to conduct an inspection. The handbook indicates that inspectors "possess various degrees and types of experience," and that an inspector who "needs additional information or guidance should coordinate with personnel experienced in that particular speciality." FAA Order 8900.1 ¶ 6-295(C) (2008).

-14-

information that would provide necessary context for a claim of constitutional violation.

These and the other "naked assertion[s]" of procedural due process violations are "devoid of 'further factual enhancement'" and do not survive the motion to dismiss. <u>Iqbal</u>, 129 S. Ct. at 1949 (alteration in original) (quoting <u>Twombly</u>, 550 U.S. at 557) (internal quotation marks omitted).

Carl's actions were also entirely consistent with lawful conduct, which is another reason the complaint fails to meet the <u>Iqbal</u> standard. <u>See, e.g.</u>, <u>Argueta</u> v. <u>U.S. Immigration & Customs Enforcement</u>, 643 F.3d 60, 75 (3d Cir. 2011) (complaint fails to state a <u>Bivens</u> claim where the allegations "described conduct consistent with otherwise lawful behavior" by immigration officials); <u>Brooks</u> v. <u>Ross</u>, 578 F.3d 574, 581 (7th Cir. 2009) (complaint fails to state a constitutional claim under 42 U.S.C. § 1983 where actions of law enforcement officials in conducting investigation were "consistent with lawful conduct").

2.    First Amendment Retaliation

As with the procedural due process claim, no claim of retaliation in violation of the First Amendment is stated, even without looking to the additional requirements needed to overcome qualified immunity.

It is questionable whether <u>Bivens</u> extends to cases asserting a violation of First Amendment rights or retaliation for

the exercise of those rights. The Supreme Court has declined to extend Bivens to an instance of a federal employee allegedly suffering retaliation for protected speech in violation of the First Amendment. Bush v. Lucas, 462 U.S. 367, 369, 373, 390 (1983). Further, Iqbal itself stated that the Court has "declined to extend Bivens to a claim sounding in the First Amendment," while assuming, without deciding, that a Bivens claim based on the Free Exercise Clause would be actionable. 129 S. Ct. at 1948. Once again, we need not decide the question, as even assuming such a claim is cognizable under Bivens, Air Sunshine's complaint is deficient.

"In order to succeed on a First Amendment retaliation claim, a party must show that her conduct 'was constitutionally protected, and that this conduct was a substantial factor [or] . . . a motivating factor driving the allegedly retaliatory decision.'" Gorelik v. Costin, 605 F.3d 118, 123 (1st Cir. 2010) (alterations in original) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 10 (1st Cir. 2005)).

The complaint does not meet even this basic standard. The only even arguably protected activity the complaint alleges is that Air Sunshine stated, at an October 8, 2008 meeting with Carl, that an FAA employee, Hau-Lepera, had "done Air Sunshine no justice." The complaint provides no factual basis plausibly to

-16-

infer that Carl's later actions were motivated by this comment with respect to any of the three sets of facts.

It is true the period for the C402 inspection process expired, but not on the basis of any actions by Carl, and so the retaliation claim fails with respect to that set of occurrences.

As to the ferry permit, all of the specifically alleged events occurred before the October 8 meeting and so could not have been retaliatory on Carl's part. The complaint alleges that Carl initially refused the permit on August 28, 2008, and continued that refusal until some unspecified time in October 2008, when Carl conducted the inspection. While the complaint does not state when the inspection took place, no facts are alleged to provide a plausible basis to conclude that the period of delay (if any such period existed) between the October 8 meeting and the inspection was in retaliation for the comment about Hau-Lepera.

Air Sunshine's SAAB 340 proving test allegations also fail to provide a plausible basis to infer retaliation for the comment. The complaint essentially describes a series of delays regarding the proving test process that began around August 2007 and continued into 2009. These delays are entirely consistent with permissible and lawful actions, particularly after Carl's 2008 involvement.

First, there are specific procedures which govern the proving test, and Air Sunshine does not plead that it complied with

-17-

these procedures. The process is detailed and places the burden on the operator to provide the appropriate material for the proving test to take place. See FAA Order 8900.1 ¶¶ 3-2286 to 3-2316 (2011). In phase one, the applicant must request authorization from the FAA to conduct the proving runs; after such a request, an initial contact meeting occurs and an FAA test team is assigned. Id. ¶ 3-2312. In phase two, the applicant must prepare a formal test plan, providing a variety of information, and this plan must be complete before the evaluation may continue. Id. ¶ 3-2313. In phase three,[10] the FAA test team engages in an "in-depth review and analysis of the applicant's test plan." Id. ¶ 3-2314. If the inspector determines that "the material is deficient or unacceptable, the [inspector] must return the entire submission to the operator." Id. ¶ 3-4(C) (2011). The Handbook also makes clear that while FAA employees "may provide advice and guidance" to applicants, "the development of the final product submitted to the FAA is solely the responsibility of the operator," not the FAA employee. Id. ¶ 3-2(C).

Air Sunshine's complaint makes no attempt either to plead that it complied with any of these requirements, or to state in non-conclusory terms how the relevant procedures were not followed

---

[10] It does not appear that phases four and five, which involve inspection and review, FAA Order 8900.1 ¶¶ 3-2315, 3-2316 (2011), were ever reached in this case.

by Carl.[11]  In fact, the complaint itself states some of the reasons Carl offered for why the proving tests could not take place, including Air Sunshine's failure to comply with FAA regulations and submitting information in an improper procedural format.  These reasons, on their face, are entirely consistent with the procedural requirements outlined in the FAA handbook.

There is simply no basis to infer that Carl's actions were motivated by retaliation for a remark critical of a co-worker and friend.  "As between [these] 'obvious alternative explanation[s]'" for the delays, and the "purposeful, invidious discrimination [Air Sunshine] asks us to infer, discrimination is not a plausible conclusion." Iqbal, 129 S. Ct. at 1951-52 (quoting Twombly, 550 U.S. at 567).

Second, at the time of the October 8 meeting, Air Sunshine had already been waiting for proving runs for over a year. This delay occurred before Carl was even assigned to Air Sunshine's certification. See Gagliardi v. Sullivan, 513 F.3d 301, 308 (1st Cir. 2008) (allegations of retaliation did not suffice where the

---

[11]  The complaint does allege that errors in Air Sunshine's operations manual, which Carl cited as part of the basis for the delay, were "outside the scope of his responsibilities."  This statement is conclusory and appears to be incorrect.  The FAA handbook explains that the Principal Maintenance Inspector's "role in the review process is to provide an independent and objective evaluation of the operator's manual material.  The PMI must ensure that the operator's material complies with 14 CFR, is consistent with safe operating practices, and is based on sound rationale or demonstrated effectiveness."  FAA Order 8900.1 ¶ 3-3286(C) (2007).

complained-of action "long predated the speech and continued" afterward); McDonnell v. Cisneros, 84 F.3d 256, 259 (7th Cir. 1996) (dismissing complaint where "[t]he allegedly retaliatory conduct was merely the continuation of the conduct giving rise to the complaints").

Third, the complaint does not provide any facts concerning certification of aircraft owned by similarly situated companies, general information about how long the certification process usually takes, allegations explaining why the proffered reasons for delay were false or unjustified, or any other facts that would support an inference of differential treatment, much less that the treatment was motivated by retaliation. Air Sunshine's "[m]ere broad conclusory allegations of wrongdoing in the complaint are not a substitute for a meaningful factual context." Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 42 (1st Cir. 1992).

As a result, the complaint fails to state a claim of retaliation. Because no constitutional claims were stated, Carl was entitled to qualified immunity and the magistrate judge erred in ruling otherwise.

### III.

Air Sunshine chose to pursue claims under Bivens, which provides a remedy only in "limited circumstances" where plaintiffs lack "any other remedy for the alleged constitutional deprivation."

-20-

<u>Corr. Servs. Corp.</u> v. <u>Malesko</u>, 534 U.S. 61, 67 (2001). Air Sunshine had other options available to it, which it did not take. For instance, Air Sunshine, if it believed it was wronged, could have brought claims under the Administrative Procedure Act. <u>See</u> 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action . . . is entitled to judicial review thereof."); <u>id.</u> § 706(1) (providing reviewing court with the authority to "compel agency action unlawfully withheld or unreasonably delayed"); <u>id.</u> § 551(13) (defining "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act"). A suit seeking $7 million in damages from individual federal employees on these pleadings was not viable.

We reverse and direct entry of judgment in favor of Carl on grounds of qualified immunity. So ordered.

Costs are awarded to Carl.

-21-