# United States Court of Appeals
## For the First Circuit

No. 15-1115

DEANNE CASEY,

Plaintiff, Appellant,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES; SYLVIA M. BURWELL,
in her capacity as Secretary of the Department of Health and
Human Services; DEBORAH LEE JAMES, in her official capacity as
Secretary of the United States Air Force; DEPARTMENT OF DEFENSE;
WILLIAM CARPENTER; FRANK GLENN; LEON E. PANETTA, in his official
capacity as Secretary of Defense,

Defendants, Appellees,

STG INTERNATIONAL; JESSE BURK, individually and in her official
capacity as Health Promotion Operation Manager at the Federal
Occupational Health Division of the Department of Health and
Human Services,

Defendants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. William G. Young, U.S. District Judge]
[Hon. M. Page Kelley, U.S. Magistrate Judge]

---

Before

Howard, Chief Judge,
Selya and Stahl, Circuit Judges.

---

Joseph L. Sulman, with whom David I. Brody and Law Office of
Joseph L. Sulman, were on brief, for appellant.
Anita Johnson, Assistant United States Attorney, with whom
Carmen M. Ortiz, United States Attorney, was on brief, for
appellees.

December 7, 2015

**STAHL**, **Circuit Judge**.  The Plaintiff-Appellant, Deanne Casey, was formerly employed as a nurse coordinator with the Civilian Health Promotion Services Program ("CHPS Program") at Hanscom Air Force Base in Bedford, Massachusetts ("Hanscom").  After Casey's employment was terminated, she brought suit against the government contractor that employed her, her supervisor, as well as several government agencies and officials that she believed were involved in her termination.  In relevant part, Casey alleged a violation of her First Amendment rights pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).[1]  She also alleged that several of the defendants had engaged in unlawful gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

In the proceedings below, the district judge dismissed Casey's Bivens claim.  Then, later, a magistrate judge granted summary judgment to the remaining defendant on the Title VII claim.  Casey now appeals.  We AFFIRM both dispositions, though we do so as to the Bivens claim for reasons other than those relied upon by the district judge.

---

[1] A "Bivens" action is a civil suit brought against agents of the United States, and is viewed as the federal analog to § 1983 suits against state officials.  See Soto-Torres v. Fraticelli, 654 F.3d 153, 157-58 (1st Cir. 2011).

## I. Facts and Background

A. <u>Casey's Employment at Hanscom</u>

The CHPS Program was created pursuant to an interagency agreement between the Federal Occupational Health Division ("FOH Division") of the United States Department of Health and Human Services ("DHHS") and the United States Air Force Materiel Command ("AFMC"). Its purpose is to provide occupational health services to civilian employees of the AFMC. However, neither the FOH Division nor the AFMC directly administer or run the CHPS Program. Rather, the FOH Division engages private contractors to perform these functions.

In 2007, Casey was hired as a Nurse Coordinator by STG International Inc. ("STG"), the government contractor then employed to administer the CHPS Program at Hanscom. As a Nurse Coordinator, Casey was responsible for teaching health and wellness classes, conducting blood pressure and cardiac risk profile screenings, and performing other health-related services for AFMC personnel employed at Hanscom.

In 2010, the contractual arrangements were amended. A company known as Millennium Health and Fitness, Inc. ("Millennium") became the prime contractor to the FOH Division, and STG entered into a subcontract with Millennium. Contemporaneously, Casey executed a new employment agreement with STG, now the subcontractor to Millennium. This agreement provided

that Casey would continue her employment with STG, performing similar job functions as she had previously when STG was the primary contractor to the FOH Division.

At all relevant times, STG set and paid Casey's salary and provided her with employee benefits and W-2 forms. Casey's immediate STG supervisor was Jesse Burk, who was the Health Promotion Operation Manager overseeing the CHPS Program at a total of eight Air Force bases across the country. Although Burk initially was employed by STG when it was the prime contractor, in 2010, coincidentally with the contract change, she became an employee of Millennium. Burk reported to Susan Steinman, who was an employee of the FOH Division of the DHHS.

At all times, based on criteria prescribed by the FOH Division, Burk was responsible for developing the health and wellness curriculum that Casey taught at Hanscom. Burk also reviewed Casey's calendar on a monthly basis to ensure that Casey was teaching the requisite number of courses and was otherwise using her time effectively. While Burk was employed by STG, among her other duties, she was responsible for completing Casey's performance evaluations. When Burk transferred from STG to Millennium, direct responsibility for Casey's performance evaluations fell to a different STG employee, though Burk continued to provide Casey with feedback and recommendations.

The record suggests that, sometime in 2011, Casey's work performance began to falter. For example, in August 2011, Burk was forced to counsel Casey about her poor communication skills and her unexplained absences from her office during the workday.

The situation escalated in November 2011, when Burk received reports from William Carpenter, the manager of the Health and Wellness Center at Hanscom (where Casey's office was located), that Casey was not performing her job duties and was being uncommunicative. On Thursday, November 10, Casey discovered a memorandum critical of her performance sitting on a workplace copy machine and confronted Carpenter in his office about the memorandum's contents. The parties offer diverging accounts of exactly what transpired, although it is clear that, immediately following the confrontation, Casey reported to military police that Carpenter had assaulted her.

Burk did not learn of the November 10 incident until the following Monday, November 14, when she received an e-mail from Judith Holl, an AFMC employee in charge of overseeing the CHPS Program. Holl's e-mail reported a "major incident at Hanscom," and in subsequent communications with Burk, Holl urged that Casey be removed from the CHPS Program. In turn, Burk contacted Steinman. Over the course of the day on November 14, Holl, Burk, and Steinman communicated by phone and e-mail about the need to terminate Casey's employment based on her poor performance.

The next day, November 15, the tenor of the communications changed drastically, as Holl, Burk, and Steinman grew increasingly concerned that Casey was refusing to respond to military personnel at Hanscom, and was unaccounted for at a secure military facility. Holl indicated that she had "grave concerns about . . . Casey's presence [at] Hanscom," and she reported that Casey sounded "paranoid almost delusional." Holl requested that Casey be "removed immediately from [Hanscom] and her ID card confiscated."

Around midday on November 15, STG made the decision to terminate Casey's employment. Burk spoke with Casey by phone, and notified her that she was being placed on administrative leave. Shortly thereafter, Air Force Colonel Frank Glenn ("Colonel Glenn") arrived at Casey's office, escorted her off the base, and revoked her security clearance. STG formally terminated Casey's employment two days later on November 17, 2011.

B.  The Proceedings Below

In a First Amended Complaint filed in April 2012, Casey asserted a Bivens claim for violation of her First Amendment rights against the United States Department of Defense ("DoD"), the DHHS, Michael Donley, in his official capacity as Secretary of the United States Air Force ("Secretary Donley"), Colonel Glenn (who had escorted Casey off-base), and Carpenter (the Hanscom employee whom Casey had accused of assault). The Bivens claim alleged that

Casey's employment had been terminated in retaliation for her having exercised her First Amendment right to report to military police that Carpenter had assaulted her.

These defendants subsequently filed a motion to dismiss based on lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). At an ensuing hearing, the district judge dismissed the Bivens claim, holding that the Contract Disputes Act, 41 U.S.C. § 7101 et seq., provided Casey with an existing alternative remedial scheme under which to bring her claims.

Later, the district judge granted Casey leave to amend her complaint to add a claim of gender discrimination under Title VII against STG, Kathleen Sebelius, in her then-official capacity as Secretary of the DHHS ("Secretary Sebelius"), and Secretary Donley. Casey subsequently dismissed her Title VII claim against STG and Secretary Donley, leaving Secretary Sebelius as the sole remaining Title VII defendant.

In the midst of all of this, with the consent of the parties, the case was transferred from the district judge to a magistrate judge.[2] Secretary Sebelius moved for summary judgment, arguing in relevant part that Casey was an employee of STG, not the DHHS, and that the DHHS was therefore not liable to Casey under

---

[2] The case was actually transferred twice: first from the district judge to a magistrate judge, then from one magistrate judge to another when the first retired.

Title VII.  The magistrate judge agreed and granted summary judgment.

## II. Discussion

Casey now appeals both the district judge's dismissal of her Bivens claim and the magistrate judge's entry of summary judgment on her Title VII claim.  We consider each issue in turn.

A.    Bivens

In Bivens, the Supreme Court recognized for the first time an implied private right of action for damages against federal officers alleged to have violated a citizen's constitutional rights.  403 U.S. at 397.  The scope of constitutional violations redressable by means of a Bivens action is, however, quite limited.  Bivens itself recognized a right to relief against federal officers alleged to have undertaken a warrantless search and seizure in violation of the Fourth Amendment.  Id.  In the more than four decades since, the Supreme Court has extended the Bivens holding beyond its original Fourth Amendment confines only twice.  See Davis v. Passman, 442 U.S. 228 (1979) (employment discrimination in violation of the Due Process Clause of the Fifth Amendment); Carlson v. Green, 446 U.S. 14 (1980) (Eighth Amendment violations committed by prison officials).  The Court's hesitancy to extend Bivens further stems, at least in part, from its recognition that Congress is generally better-positioned to craft appropriate remedial schemes to address constitutional violations committed by

- 9 -

federal officers. See, e.g., Bush v. Lucas, 462 U.S. 367, 373 (1983) ("Our prior cases . . . . establish our power to grant relief that is not expressly authorized by statute, but they also remind us that such power is to be exercised in the light of relevant policy determinations made by the Congress.").

To date, both the Supreme Court and the First Circuit have declined to expressly extend Bivens to encompass a First Amendment claim. See id. at 390 ("[W]e decline 'to create a new substantive legal liability [for First Amendment violations] without legislative aid . . . .'") (quoting United States v. Standard Oil Co., 332 U.S. 301, 302 (1947)); see also Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (noting that the Supreme Court has so far "declined to extend Bivens to a claim sounding in the First Amendment"); Air Sunshine, Inc. v. Carl, 663 F.3d 27, 35 (1st Cir. 2011) ("It is questionable whether Bivens extends to cases asserting a violation of First Amendment rights or retaliation for the exercise of those rights."). Undeterred, Casey urges us to recognize a Bivens claim premised on a violation of her First Amendment rights.

In deciding whether to recognize a Bivens remedy, courts employ a two-step inquiry. Wilkie v. Robbins, 551 U.S. 537, 550 (2007). "In the first place, there is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from

providing a new and freestanding remedy in damages." Id. If there is no such process already in place, the court must then consider whether there exist any "special factors counselling hesitation" to the creation of a new judicial remedy. Id. (quoting Bush, 462 U.S. at 378).

In the proceedings below, the district judge dismissed Casey's Bivens claim after finding that an alternative process existed to remedy the alleged infringement of her First Amendment rights. At a hearing on the motion to dismiss filed by the DoD, the DHHS, Secretary Donley, Colonel Glenn, and Carpenter, the district judge concluded that the Contract Disputes Act afforded Casey an avenue by which to pursue her claims against these defendants. Consequently, the district judge did not reach the question of whether there existed special factors counselling hesitation to the creation of a First Amendment Bivens remedy.

We review de novo the district judge's dismissal of Casey's Bivens claim for lack of subject matter jurisdiction. Town of Barnstable v. O'Connor, 786 F.3d 130, 138 (1st Cir. 2015). We review the allegations in the complaint liberally, treating well-pled facts as true, and indulging all reasonable inferences in Casey's favor. Id. Importantly, we are not bound by the district judge's reasoning, and we may affirm an order of dismissal on any ground evident from the record. MacDonald v. Town of Eastham, 745 F.3d 8, 11 (1st Cir. 2014).

The parties dispute not only whether Casey is eligible to bring suit under the Contract Disputes Act, but also whether special factors counsel against our recognition of a <u>Bivens</u> remedy under the circumstances of this case. As we explain, however, we decline to resolve either of these questions because we conclude that Casey's <u>Bivens</u> claim is properly dismissed for a far more basic reason: it fails to comply with the pleading requirements prescribed by Federal Rule of Civil Procedure 8(a)(2).[3]

Before we can reach the substance of Casey's <u>Bivens</u> claim, we must take a moment to consider the defendants against whom this claim is levied. As we have said, Casey's <u>Bivens</u> claim was asserted against the DoD, the DHHS, Secretary Donley (in his official capacity only), Colonel Glenn (in his personal and professional capacities), and Carpenter.

This list may be quickly whittled down, however, because "the Supreme Court has refused to recognize a <u>Bivens</u> remedy against federal agencies (even those for which sovereign immunity has been broadly waived)." <u>Tapia-Tapia</u> v. <u>Potter</u>, 322 F.3d 742, 746 (1st

---

[3] We note that Casey may be correct in her contention that she was ineligible to bring suit under the Contract Disputes Act because, as an employee of a subcontractor, she was not a contractor, nor did her claims directly relate to a contract with the federal government. <u>See</u> 41 U.S.C. § 7103(a) (describing the Contract Disputes Act's applicability to "claim[s] by a contractor against the Federal Government relating to a contract"). However, because it does not affect the end result, we need not expressly resolve this issue.

- 12 -

Cir. 2003) (citing FDIC v. Meyer, 510 U.S. 471, 484-86 (1994)). Nor may a Bivens suit be brought against a federal officer in his official capacity. Id.; see also Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000). Accordingly, Casey's Bivens claim is foreclosed insofar as it is asserted against the DoD and the DHHS, both federal agencies, and against Secretary Donley, whom Casey sued only in his official capacity. On top of that, Casey concedes in her reply brief that her Bivens claim against Carpenter is not viable. Thus, when all is said and done, what was once a lively gathering of Bivens defendants now appears to be reduced to a party of one: Colonel Glenn.[4]

"Under the Federal Rules of Civil Procedure, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). The plaintiff need not demonstrate that the claim is likely to prevail, but the complaint must include enough factual detail to make the asserted claim "plausible on its face." Id. (quoting Iqbal, 556 U.S. at 678).

---

[4] In her reply brief, Casey clarifies that, if we were to remand the case to the district court, she would seek to amend her complaint to assert a Bivens claim against Judith Holl, the AFMC employee who requested Casey's removal from the CHPS Program and from Hanscom. Because Casey did not seek to add Holl as a defendant in the proceedings below, we cannot - and will not - consider the viability of any such claim on appeal. See United States v. Isom, 580 F.3d 43, 53 n.14 (1st Cir. 2009).

In evaluating the sufficiency of a complaint under Rule 8, we must first distinguish "the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Then, we must determine whether the complaint's factual allegations are sufficient to support "the reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

At the outset of our analysis, we must be clear about the legal issue that is in dispute. Cardigan Mountain Sch., 787 F.3d at 84. In her First Amended Complaint, the operative pleading for purposes of the Bivens claim, Casey alleged that the defendants violated her First Amendment rights by terminating her employment in retaliation for filing a police report regarding the alleged assault perpetrated by Carpenter. Our inquiry, then, must necessarily focus on the factual allegations against Colonel Glenn, and we must decipher whether these allegations are sufficient to reasonably infer that he is liable for Casey's (alleged) unlawful termination.

Read in its entirety, the First Amended Complaint contains the following allegations against Colonel Glenn:

(1) "[o]n several occasions, [Casey] asked officials at Hanscom, including [Colonel Glenn], to move her office to another building so she would not need to work near Carpenter"; (2) "[a]t all times, Col[onel] Glenn knew about Carpenter's harassment of [Casey] and the negative effect of the harassment on [Casey]"; and (3) "[on November 15, 2011, Colonel Glenn] came to [Casey]'s office and escorted [Casey] off the base. He told [Casey] that she should take all her belongings from the office. . . . At this time, . . . [Colonel Glenn] . . . knew that [Casey] had filed a police report concerning the assault by Carpenter on November 10."

As we must, we construe these allegations liberally, assume their verity, and draw all reasonable inferences in Casey's favor. O'Connor, 786 F.3d at 138. Yet, even read together, these allegations fail to plausibly suggest that Colonel Glenn had any involvement whatsoever in the decision to terminate Casey's employment. Rather, it appears that Colonel Glenn was simply assigned the task of escorting Casey from her office and revoking her security clearance once STG decided to terminate her employment. In other words, based on what is before us, it is apparent that Colonel Glenn did not commit the offense of which he stands accused.

For all of these reasons, we conclude that Casey's Bivens claim fails to plausibly demonstrate her right to recover against

any of the defendants that it names.  Therefore, we AFFIRM its dismissal by the district judge.

B.    Title VII

Following the dismissal of her Bivens claim, the district judge granted Casey leave to further amend her complaint to add a Title VII gender discrimination claim against STG, Secretary Donley, and Secretary Sebelius.  In a Third Amended Complaint, Casey alleged that these defendants had unlawfully terminated her employment in retaliation for her having reported to Hanscom authorities that Carpenter had discriminated against her on the basis of her gender and had assaulted her in his office on November 10, 2011.

Later, Casey dismissed her Title VII claim against STG and Secretary Donley.  Then, as the sole remaining Title VII defendant, Secretary Sebelius moved for summary judgment on behalf of the DHHS.  The magistrate judge found that Casey was not an employee of the DHHS and was therefore ineligible to sue under Title VII.  On this basis, the magistrate judge granted summary judgment in favor of the DHHS.

We review orders of summary judgment de novo, assessing the record in the light most favorable to the nonmovant and resolving all reasonable inferences in that party's favor. Bingham v. Supervalu, Inc., __ F.3d __, __, 2015 U.S. App. LEXIS 19794, at *7 (1st Cir. Nov. 13, 2015).  The entry of summary judgment is

appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. (quoting Fed. R. Civ. P. 56(a)).  While assessing the nature of an employment relationship requires a fact-specific inquiry, we may resolve this inquiry on summary judgment in the absence of disputed issues of material fact.  Alberty-Vélez v. Corporación de P.R. Para La Difusión Pública, 361 F.3d 1, 7 (1st Cir. 2004).

Title VII prohibits an employer from retaliating against an employee for engaging in certain protected activity, which includes making a charge that the employer has engaged in unlawful discrimination on the basis of race or sex.  42 U.S.C. § 2000e-2, 3; see also Ray v. Ropes & Gray LLP, 799 F.3d 99, 107 (1st Cir. 2015).  Here, because only employees may bring suit under Title VII for unlawful retaliation, the sole issue we must consider is whether Casey was an employee of the DHHS.  See 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . .") (emphasis added); see also DeLia v. Verizon Commc'ns Inc., 656 F.3d 1, 6 (1st Cir. 2011) (concluding that the fact that the defendant was not the plaintiff's employer was "fatal" to her Title VII retaliation claim).  Casey does not dispute that she was an employee of STG, but she invokes the so-called "joint employment doctrine" to contend that she was also an

employee of the DHHS. See, e.g., Butler v. Drive Auto. Indus. of Am., Inc., 793 F.3d 404, 408 (4th Cir. 2015) ("[T]wo parties can be considered joint employers and therefore both be liable under Title VII if they share or co-determine those matters governing the essential terms and conditions of employment." (citations omitted) (internal quotation marks omitted)).

Title VII defines an "employee" as "an individual employed by an employer," 42 U.S.C. § 2000e(f), an elucidation that the Supreme Court has generously described in a similar context as being "completely circular and explain[ing] nothing," Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992). Where, as here, the statute contains the word "employee," but does not plainly define it, we "must presume that Congress has incorporated traditional agency law principles for identifying 'master-servant relationships.'" Lopez v. Massachusetts, 588 F.3d 69, 83 (1st Cir. 2009).

In determining whether an employment relationship exists, we look to the Equal Employment Opportunity Commission Compliance Manual ("EEOC Manual"), which sets forth a "non-exhaustive" list of factors to consider: (1) whether the employer has the right to control when, where, and how the worker performs the job; (2) the level of skill or expertise that the work requires; (3) whether the work is performed on the employer's premises; (4) whether there is a continuing relationship between

- 18 -

the worker and the employer; (5) whether the employer has the right to assign additional projects to the worker; (6) whether the employer sets the hours of work and the duration of the job; (7) whether the worker is paid by the hour, week, or month rather than the agreed cost of performing a particular job; (8) whether the worker hires and pays assistants; (9) whether the work performed by the worker is part of the regular business of the employer; (10) whether the employer is in business; (11) whether the worker is engaged in his or her own distinct occupation or business; (12) whether the employer provides the worker with benefits, such as insurance, leave, or worker's compensation; (13) whether the worker is considered an employee of the employer for tax purposes; (14) whether the employer can discharge the worker; and (15) whether the worker and the employer believe that they are creating an employer-employee relationship. Lopez, 588 F.3d at 85 (quoting 2 Equal Emp't Opportunity Comm'n, EEOC Compliance Manual, § 2-III, at 5716-17 (2008)). While these factors are to be weighed in their totality, "in most situations, the extent to which the hiring party controls 'the manner and means' by which the worker completes her tasks will be the most important factor in the analysis." Alberty-Vélez, 361 F.3d at 7 (citing Eisenberg v. Advance Relocation & Storage, Inc., 237 F.3d 111, 114 (2d Cir. 2000)).

In a thirty-one-page written decision, the magistrate judge carefully considered the relevant EEOC Manual factors and

concluded that Casey was not an employee of the DHHS. Our own review of these factors dictates the same result.[5]

### 1. The Right to Control

Casey focuses principally on the issue of control, and she argues that the magistrate judge overlooked evidence that Jesse Burk, Casey's immediate supervisor, acted as an agent of the DHHS. See Román-Oliveras v. P.R. Elec. Power Auth., 655 F.3d 43, 51 (1st Cir. 2011) (noting that Title VII was intended to ensure respondeat superior liability of an employer for the acts of its agents) (quoting Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996)). To be sure, the record establishes that Burk exercised significant control over Casey's performance of her job duties. For example, based on criteria supplied by the FOH Division, Burk developed the health and wellness curriculum that Casey was to teach at Hanscom. What is more, before her transfer from STG to Millennium, Burk completed Casey's performance evaluations and monitored Casey's calendar to ensure that Casey was using her time in accordance with AFMC and FOH Division requirements. The record likewise establishes that although Burk was an employee of STG (and later, of Millennium), she worked closely with, and reported directly to, Susan Steinman, a DHHS employee. Casey relies on this evidence to

---

[5] Although we confine our written decision to the factors made most relevant by the record, we have considered each of the fifteen factors prescribed by the EEOC Manual.

suggest that Burk acted as an agent of the DHHS, and that the DHHS therefore exercised actual control over the performance of her job duties.

We do not consider the issue of control in a vacuum. Rather, control "must be considered in light of the work performed and the industry at issue." Alberty-Vélez, 361 F.3d at 9. Here, as we have said, the CHPS Program was created pursuant to an interagency agreement between the FOH Division and the AFMC. The FOH Division was responsible for recruiting contractors to administer the CHPS Program. In 2007, when STG hired Casey, STG had been awarded the government contract to perform this function. It should thus come as no surprise that the DHHS, as one of the two government entities ultimately responsible for the CHPS Program, would exert some measure of control over STG's (and later Millennium's) performance.

However, the measure of control that the DHHS employed in setting performance criteria and overseeing Burk's administration of the CHPS Program cannot be fairly viewed as rendering Burk an agent, or Casey an employee, of the DHHS. As courts have recognized, every government contract (indeed, most every service contract) requires some measure of oversight of the contractor by the hiring party. See, e.g., King v. Dalton, 895 F. Supp. 831, 838 n.10 (E.D. Va. 1995) ("Presumably, any large government contract will be supervised to some extent by the

relevant government agency.  Yet, the word 'employee' in [Title VII] clearly does not encompass every government contractor."). On these facts, we agree with the magistrate judge that the DHHS did not exert such control over Casey's performance of her job duties as to establish an employment relationship.

### 2.    Compensation, Benefits, and Tax Treatment

Next, the record indisputably establishes that STG - not the DHHS - controlled the terms and conditions of Casey's employment by setting her salary and providing her with benefits. Likewise, it was STG that provided Casey with her annual W-2 form.

### 3.    The Right to Discharge

Casey contends that the DHHS had de facto authority to terminate her employment and is therefore properly viewed as her employer.  We have carefully reviewed the record evidence regarding the events of November 14 and 15, 2011, when news of the November 10 confrontation between Casey and Carpenter came to light.  In e-mail correspondence during this period, both Holl (an AFMC employee) and Steinman (an FOH Division employee) indicated their belief that Casey's employment should be terminated.  Casey suggests that this is evidence that the DHHS had the authority to order her termination.

We reject this suggestion.  As an initial matter, while Holl and Steinman, as representatives of the two government agencies responsible for the CHPS Program, no doubt had some

measure of influence, there is simply no record support for the conclusion that anyone other than STG had the ultimate authority to fire Casey.  See Barton v. Clancy, 632 F.3d 9, 18-19 (1st Cir. 2011) (finding that the defendant city mayor was not an employer of the plaintiff high school athletics coach where, despite his "indirect influence," the mayor did not have the ultimate authority to fire the coach).

What is more, we consider the EEOC Manual factors in their specific context.  Alberty-Vélez, 361 F.3d at 9.  Here, it appears that Steinman and Holl were concerned because Casey was acting unpredictably and was unaccounted for at a secure military facility.  While both expressed a belief that Casey's employment should be terminated, both seem to have been principally focused on locating Casey, having her removed from the base, and revoking her security clearance.  Mindful of this unique context, we cannot conclude that a government agency is appropriately exposed to Title VII liability merely by voicing concerns about safety risks posed by an employee of a government contractor.[6]

---

[6] This is particularly true here, where Casey's employment at Hanscom was dependent on her having the appropriate security clearance.  The record suggests that STG did not have positions available in Massachusetts other than Casey's position at Hanscom.  Therefore, once Casey's security clearance was revoked, STG seems to have been left with little choice but to terminate her employment.

### 4. The Belief of the Parties

Finally, we note the undisputed understanding of both Casey and the DHHS that Casey was solely an employee of STG. When STG first hired Casey in 2007, the paperwork it provided to her described her as a "full-time employee with STG International." Then, in 2010, when Casey executed her new employment agreement with STG following the subcontract with Millennium, STG provided her with a similar set of documents plainly identifying her as an STG employee. On top of that, the subcontract agreement itself provided that "[a]ll persons furnished by [STG] . . . shall be considered solely [STG]'s employees or agents . . . ." We can identify no record evidence which would permit either party to reasonably believe that Casey was an employee of the DHHS.

### 5. The Sum of the Factors

Viewing the EEOC Manual factors in their totality, we concur with the magistrate judge that there is no genuine dispute as to any material fact regarding Casey's status as an employee solely of STG. Therefore, the entry of summary judgment in favor of the DHHS on Casey's Title VII claim was proper.

### III. Conclusion

For the reasons we have described, the district judge's dismissal of the Bivens claim and the magistrate judge's entry of summary judgment on the Title VII claim are both hereby AFFIRMED.