BLD-255                                                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1599
_____

JOHN PASSMORE,
Appellant
v.

JOSEPH IANNELLO, CORPORAL AT ERIE COUNTY PRISON;
JAMES S. VESHECCO, DIRECTOR OF CORRECTIONS/WARDEN AT ERIE
COUNTY PRISON;MICHAEL HOLMAN, DEPUTY WARDEN AT ERIE COUNTY
PRISON, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 1:12-cv-00090)
District Judge:  Honorable Susan Paradise Baxter
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
May 23, 2013
Before:  SCIRICA, HARDIMAN and GREENAWAY, JR., Circuit Judges

(Opinion filed: June 14, 2013)
_____

OPINION
_____

PER CURIAM

        John Passmore, a Pennsylvania state prisoner proceeding pro se, appeals an order

of the United States District Court for the Western District of Pennsylvania granting

summary judgment for the defendants in his civil rights action. For the reasons below, we will summarily affirm. See 3d Cir. L.A.R 27.4; I.O.P. 10.6.

I.

Because we primarily write for the parties, we will only recite the facts necessary for our discussion. On April 2, 2012, Passmore filed a civil rights complaint against Warden James S. Veshecco, Deputy Warden Michael Holman and Corporal Joseph Iannello. According to Passmore, on February 23, 2011, while he was housed in the restricted housing unit ("RHU")[1] at the Erie County Prison ("ECP"),[2] Corrections Officer Robert Tome ordered Passmore to present himself to take a mandatory shower, as required by ECP Policy 200-20. The policy states: "Inmates in special management units have the opportunity to shave and shower at least three times per week. (Inmates must shower on Monday, Wednesday, and Friday.)" (Dkt. No. 16-3, p. 4.) Passmore refused the officer's order, explaining that he was sick and that he had taken a shower the previous day.

Tome stated in his incident report that he ordered Passmore twice to step up to be cuffed for the shower, but Passmore refused. (Dkt. 16-4, pp. 1.) Tome notified Defendant Ianello of the situation, at which point he and Corporal William Niebling went to Passmore's cell. (Id.) According to Niebling, he ordered Passmore four times to come

---

[1] The record shows that Passmore was placed in the RHU because he had an extensive history of misconducts in prison.

[2] Passmore is currently incarcerated at the State Correctional Institute at Forest in Marienville, Pennsylvania, serving a life sentence for murder.

to the cell gate to be handcuffed, but again Passmore refused. (Dkt. 16-4, pp. 2.)

Defendant Ianello then gave Passmore three separate orders to step up to the gate for a

shower, but again, Passmore refused. (Id.) Ianello stated that he informed Passmore that

if he did not comply with his orders, he would be sprayed with pepper spray. (Dkt. 16-4,

pp. 4.) Passmore stated that he was refusing to follow the orders, at which point Ianello

sprayed Passmore with pepper spray. (Id.)

Immediately thereafter, Passmore experienced severe burning on his body parts

that were exposed to the pepper spray, and he claims that it felt like he was suffocating.

He started banging on the cell door, but no one came to his aide. He tried to use the sink

in his cell, but the water had been shut off, allegedly pursuant to a prison policy requiring

that water in the RHU be turned off whenever an extraction team is called. According to

Passmore, the extraction team arrived at his cell "20 minutes or more" after he had been

sprayed, at which point he was removed from his cell and placed in a shower and a nurse

put solution in his eyes.

As a result of the incident, Passmore claims that he sustained injuries including

blurry vision, burning and red skin, breathing difficulty, and severe pain. He alleges that

he suffered from painful urination and that he could not see well for several days after the

incident. He claims that he put in three sick calls for his injuries. In the complaint,

Passmore acknowledges that he was treated on two subsequent occasions by the prison

nurse, who flushed out his eyes with saline and told him to take showers to wash off any

remaining pepper spray.

3

Passmore alleges violations of the Eighth, Fourth, and Fourteenth Amendments, and he seeks declaratory and injunctive relief, as well as monetary damages. Defendants filed a motion to dismiss, which the District Court treated as a motion for summary judgment. Accordingly, the District Court provided Passmore with additional time to supplement his response. After Passmore failed to do so, the District Court granted the Defendants' motion by order entered February 20, 2013. Passmore timely filed this appeal.

## II.

We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment. Howley v. Mellon Fin. Corp., 625 F.3d 788, 792 (3d Cir. 2010). In considering the record, we "apply[] the same standard that the court should have applied." Id. Summary judgment is only proper where no genuine issue exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). However, "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Furthermore, "[i]f the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Id. We may summarily affirm on any basis supported by the record if the appeal does not present a substantial question. Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

4

III.

Passmore claims that the Defendants' use of tear gas constituted excessive force in violation of the Eighth Amendment.[3] When considering an excessive use of force claim, a district court must consider whether force was applied in a "good-faith effort to maintain or restore discipline, or maliciously and sadistically" to cause harm. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). Courts look to several factors when making this determination, including (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by prison officials; and (5) any efforts made to temper the severity of a forceful response. Id. See also Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000).

As a result, use of tear gas is not "a per se violation of the Eighth Amendment. . . ." Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir. 1984). Rather, "[t]he use of mace, tear gas or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment." Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir. 1984). See also

---

[3] Passmore claims that the Defendants used excessive force in violation of the Fourth, Eighth, and Fourteenth Amendments. The District Court properly dismissed the excessive force claim under the Fourth Amendment, as the Fourth Amendment applies to "[a]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen. . . ." Graham v. Connor, 490 U.S. 386, 394 (1989), and Passmore was not a "free citizen" at the time of the incident. Moreover, excessive force claims brought under the Fourteenth

Michenfelder v. Sumner, 860 F.2d 328, 336 (9th Cir. 1988) (policy allowing use of taser guns on inmate who refused to submit to a strip search does not constitute cruel and unusual punishment); Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979) (the use of tear gas "in small amounts may be a necessary prison technique if a prisoner refuses after adequate warning to move from a cell or upon other provocation presenting a reasonable possibility that slight force will be required."); Clemmons v. Greggs, 509 F.2d 1338, 1340 (5th Cir. 1975) (the use of tear gas when reasonably necessary to subdue recalcitrant prisoners does not violate the Eighth Amendment).

Here, Passmore admits in his complaint that he refused to follow Corrections Officer Tome's and Defendant Ianello's directives to take a shower pursuant to prison policy. In fact, the record shows that Passmore refused to present himself for a mandatory shower at least nine times before Defendant Ianello used pepper spray. Moreover, before Defendant Ianello resorted to using the pepper spray, he warned Passmore, giving him one more chance to comply.[4] In light of these undisputed facts, the

---

and Eighth Amendments are analyzed under the same standard. See Fuentes v. Wagner, 206 F.3d 335, 347 (3d Cir. 2000).

[4] In his complaint, Passmore alleges that Defendant Ianello used the pepper spray without warning. (Dkt. 3, ¶ 21.) However, he has not submitted any affidavits or other record evidence to dispute Defendant Ianello's contention that he gave Passmore fair warning before he used the pepper spray. Pursuant to Fed.R.Civ.P. 56(e)(2), in responding to a motion for summary judgment, "an opposing party may not rely merely on allegations or denials in its own pleading. . ." Thus, Passmore has failed to create an issue of material fact.

6

use of pepper spray was reasonable in these circumstances and the District Court properly granted the Defendants' motion.[5][6]

IV.

Passmore claims that the Defendants violated his Eighth Amendment rights when they left him in his cell for at least twenty minutes without running water or medical attention after spraying him with pepper spray. To prevail, he must demonstrate deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 106 (1976). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009). For instance, a plaintiff may make this showing by establishing that the defendants "intentionally den[ied] or delay[ed] medical care." Id. (quotation marks omitted). However, "[w]here a prisoner has received some medical attention and the

---

[5] In his response to the Defendants' motion to dismiss, Passmore relies on Treats v.Morgan, 3908 F.3d 868 (8th Cir. 2002), to argue that the use of pepper spray in his case was excessive force in violation of the Eighth Amendment. However, the facts in Treats are inapposite to the facts at hand. In Treats, prison officers removed a radio from Treats' prison cell and he was asked to sign a form acknowledging that it had been taken. When Treats refused to take a copy of the form, a prison officer, without warning, sprayed him in the face with pepper spray. Id. at 870. In concluding that the force used against Treats was excessive under the Eighth Amendment, the Eight Circuit relied upon the fact that the officer violated the Arkansas Department of Correction's regulation requiring "an officer to warn an inmate and to give him a chance to comply before using any chemical agent on him." Id. at 870-71. Passmore was given numerous opportunities to comply before Ianello sprayed him with the pepper spray. Moreover, unlike the mandatory shower regulation at issue here, there was no regulation in place requiring Treats to take a copy of the property confiscation form. See Id. at 872.

7

dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." United States ex rel. Walker v. Fayette Cnty., 599 F.2d 573, 575 n.2 (3d Cir. 1979) (internal quotation marks omitted). The Defendants acknowledge the delay and attribute it to the time needed to assemble an extraction team. As soon as the extraction team was ready, Passmore was taken to a shower and he received medical care. Moreover, he was treated for injuries related to the pepper spray on two subsequent occasions. We agree with the District Court that this does not amount to deliberate indifference to a serious medical need and, therefore, that summary judgment in favor of the Defendants was proper.[7]

V.

We also agree with the District Court's dismissal of Passmore's Fourth Amendment claim. Passmore argues that taking a shower is a personal, private choice, which is infringed by the mandatory shower policy. While courts have acknowledged a prisoner's limited right to bodily privacy under the Fourth Amendment, see, e.g., Fortner v. Thomas, 983 F.2d 1024, 1030 (11th Cir. 1993), no such right is indicated here and

---

[6] As discussed infra, the mandatory shower requirement does not infringe on any constitutional right, and we defer to the prison officials to formulate reasonable regulations in their prison.

[7] Passmore alleges in his complaint that he heard one of the prison officers say, "let it marinate," as they left his cell after spraying him with pepper spray. However, he has offered no evidence, other than his complaint and his response to the Defendants' motion, to support this fact. Thus, summary judgment was appropriate. See Fed. R. Civ. P. 56(e)(2).

Passmore does not have a constitutional right to choose when to shower.[8] Furthermore, courts will generally not interfere with prison administrative matters and will afford significant deference to judgments of prison officials regarding prison regulation and administration. See, e.g., Jones v. N. Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 126, (1977) ("Because the realities of running a penal institution are complex and difficult, we have also recognized the wide-ranging deference to be accorded the decisions of prison administrators."). Thus, Passmore's Fourth Amendment claim also fails.

Finally, the District Court properly dismissed Passmore's due process claim. "Conduct can violate substantive due process if it shocks the conscience, which encompasses only the most egregious official conduct." Newman v. Beard, 617 F.3d 775, 782 (3d Cir. 2010). Here, Passmore's allegations are based upon the same allegations as his Eighth Amendment claims of excessive force and deliberate indifference. Because spraying Passmore with pepper spray and the ensuing delay were reasonable we cannot conclude that the Defendants' conduct "shock[ed] the conscience." Id.

---

[8]Because no constitutional right is implicated, there is no need to analyze the four factors set forth in Turner v. Safley, 482 U.S. 78 (1987), which are used to determine whether a

VI.

For the foregoing reasons, no substantial question is presented and we will affirm the judgment of the District Court.  <u>See</u> 3d Cir. L.A.R 27.4; I.O.P. 10.6.  We deny Passmore's emergency motion for the return of money to his account without prejudice to seeking relief in the District Court after exhausting the appropriate administrative remedies.

prison regulation infringing upon constitutional rights is reasonable.