# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1730
_____

Roy Don Burns

*Plaintiff - Appellant*

v.

Edward Eaton, Sgt.; Renita White, Corporal,
East Arkansas Regional Unit, ADC,

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Helena

_____

Submitted: January 14, 2014
Filed: May 23, 2014

_____

Before LOKEN, MURPHY, and SMITH, Circuit Judges.

_____

LOKEN, Circuit Judge.

In this 42 U.S.C. § 1983 action, Roy Don Burns, an inmate in the Maximum Security Unit of the Arkansas Department of Corrections ("ADC"), claims that his Eighth Amendment rights were violated when Sgt. Earl Eaton pepper-sprayed Burns when he refused to return to his cell after showering, and Cpl. Renita White turned off the water, preventing Burns from rinsing off the pepper spray for ten to fifteen

minutes. The district court[1] granted summary judgment dismissing these claims, concluding that Eaton was entitled to qualified immunity and that Burns failed to exhaust prison grievance remedies as to White. Reviewing the grant of summary judgment *de novo* and the facts in the light most favorable to Burns, we affirm.

*A. Sgt. Eaton.* On July 2, 2010, Burns was taken to a locked shower cell in Isolation Unit #3 to wash off a topical medication for treating scabies. When Burns finished his shower, Eaton told him to "catch the cuffs," meaning that Burns should turn around and allow Eaton to place hand restraints on Burns before taking him back to his cell. Burns refused. Eaton repeated his instruction. Burns again refused. Eaton took out his pepper spray and warned Burns, "If you do not catch the cuffs to go back to your cell, I'll spray you." Burns changed the topic by asking about another inmate, and Eaton again stated, "Catch the cuffs or I'll spray you." Then, according to Burns's verified *pro se* complaint:

> 7. . . . I realized it was serious so I threw my shampoo bottle at [Eaton] to keep him back away from me.
>
> 8. Then [Eaton] ran to my shower bars and started spraying me all over my face and body for about a 2 to 3 second blast.
>
> 9. At that time, I threw my soap dish at him to get him away from me. And he ran up to the bars and began spraying me again.
>
> 10. I was really mad and scared at this point . . . . So I started spitting at him to try to keep him away from me but, that did not deter him he ran up to my bars and started spraying me in my face and genital area.

---

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas, adopting in part the Recommendation of the Honorable Beth Deere, United States Magistrate Judge for the Eastern District of Arkansas.

Burns filed a grievance on the prescribed Unit Level Grievance Form, complaining that Eaton acted "against policy" by spraying Burns in the face three times with a chemical agent without "contact[ing] the Lt. or anyone else or try[ing] to get help." The warden found the complaint "has no merit." The warden noted that Burns "refused to be cuffed, argued with Sgt. Eaton, then threw a shampoo bottle at him," and was found guilty of violating five disciplinary rules as a result of the incident. "[T]he only reason that you were sprayed with a chemical agent was due to your combative behavior towards staff." Following denial of his appeal to ADC's Chief Deputy Director, Burns filed this action alleging that the pepper spraying "was a malicious and sadistic act on the part of Sgt. Eaton." The district court granted Eaton's motion for summary judgment, concluding that he did not use excessive force in spraying Burns with pepper spray, relying on undisputed facts that Burns "refused to obey multiple direct orders," "continued to grow increasingly combative," and, even after Eaton had applied pepper spray, "continued to throw various items at Defendant Eaton and began spitting on him."

(1) On appeal, Burns first argues that whether Eaton used excessive force in violation of the Eighth Amendment when he deployed pepper spray after Burns refused orders to leave a locked shower cell is a genuine issue of disputed fact.

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986) (quotation omitted). "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Id. Six years later, the Court held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore

discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); see Wilkins v. Gaddy, 130 S. Ct. 1175, 1178-79 (2010).

This is a different and less protective test than the Fourth Amendment standard that applies to "a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person." Graham v. Connor, 490 U.S. 386, 388 (1989). The Fourth Amendment standard is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation," whereas "the subjective motivations of the individual officers are of central importance in deciding whether force [was] used" maliciously and sadistically to cause harm in violation of the Eighth Amendment. Id. at 397-98.

Qualified immunity shields a government official from liability unless his conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). The Supreme Court has repeatedly stressed "the importance of resolving immunity questions at the earliest possible stage in litigation." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quotation omitted). Accordingly, when an official's intent is an element of the § 1983 claim, as it is in Eighth Amendment excessive force claims, and if the official has made a properly supported motion for summary judgment based on qualified immunity, the plaintiff "must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." Crawford-El v. Britton, 523 U.S. 574, 600 (1998).

In this case, Burns's verified complaint and his later declarations admitted that he refused Sgt. Eaton's command to "catch the cuffs" and return to his cell. At that point, Eaton no longer faced the relatively simple task of cuffing Burns and escorting

him back to his cell. Eaton now faced a recalcitrant inmate. He could not simply leave Burns in the Isolation Unit shower cell, where he did not belong. Either Burns must be persuaded to comply with the command to return to his cell, or someone must enter the shower cell and forcibly remove him. Thus, Burns's contention that he posed no threat because he was alone in a locked cell ignores the reality of what was required "to maintain or restore discipline" in this situation.

In affirming the grant of summary judgment dismissing an Eighth Amendment excessive force claim in Jones v. Shields, we noted that "a limited application of capstun [pepper spray] to control a recalcitrant inmate constitutes a tempered response by prison officials when compared to other forms of force," citing numerous cases in which "our sister circuits have approved the use of mace in small quantities to control a 'recalcitrant inmate.'" 207 F.3d 491, 496 (8th Cir. 2000) (quotation omitted). We concluded that plaintiff failed to establish "malicious or sadistic" conduct when defendant sprayed capstun in the face of a large inmate who refused a work order and objected profanely when ordered to return to his barracks. Id. at 497. By contrast, the few cases where we denied summary judgment in Eighth Amendment excessive force claims based on pepper spraying have involved no warning this force would be used, no apparent purpose other than inflicting pain, use of unnecessary "super-soaker" quantities of the chemical, refusal to allow the victim to wash off the painful chemical for days, and/or use of additional physical force. See Walker v. Bowersox, 526 F.3d 1186, 1189 (8th Cir. 2008); Treats v. Morgan, 308 F.3d 868, 873 (8th Cir. 2002); Lawrence v. Bowersox, 297 F.3d 727, 730, 732 (8th Cir. 2002).

It is undisputed that Eaton warned Burns that he would be pepper-sprayed if he did not comply with the order to "catch the cuffs." Three times, Burns then threw an object or spit at Eaton. After each aggressive act of defiance, Eaton deployed a small amount of pepper spray. This is not a case where "a complete absence of a penological purpose" raised "the reasonable inference that the officers acted maliciously in an effort to cause harm." Williams v. Jackson, 600 F.3d 1007, 1014

(8th Cir. 2010); accord Irving v. Dormire, 519 F.3d 441, 446 (8th Cir. 2008) ("guards are liable only if they are completely unjustified in using force"). Nor is there specific evidence of a malicious motive to harm, or evidence that the force used was so greatly in excess of that needed to restore and maintain order as to raise a reasonable inference of malicious motive. Thus, the district court properly granted summary judgment dismissing this claim.

(2) The grievance record included incident reports by Eaton and three other officers stating that, after the third spraying, Burns swore "in a loud aggressive voice" and threatened to stab Eaton "the first chance he got." Burns did not refute that assertion. But Burns did allege that after the third spraying, he "screamed" and tried to turn on the shower to wash off the chemical spray; Eaton instructed Cpl. White to turn off the water supply to Burns's shower; White did so; and Eaton then left the shower area and did not return. It is undisputed that, about ten minutes later, Eaton's supervisor arrived at the shower area, talked with Burns, and turned on the water to allow Burns to rinse off. Infirmary staff arrived after about 45 minutes to cleanse Burns's eyes. Burns declined treatment because his eyes "were clear by then."

Burns's prison grievance did not assert a claim that Eaton prevented Burns from washing off the painful chemical. However, in opposing summary judgment and on appeal, Burns argued that Eaton was deliberately indifferent to his medical needs when he told White to shut off the water to prevent Burns from washing off the pepper spray, and she did so. The district court concluded that Eaton is entitled to qualified immunity from this delayed decontamination claim. We agree. As it is not an excessive force claim, deliberate indifference to a serious medical need, not unnecessary and wanton infliction of pain, is the relevant legal standard. See Hudson, 503 U.S. at 5-6. Here, Burns made no sufficient showing of a serious medical need. In addition, Burns did not dispute Eaton's affidavit averring that he immediately left the area to report the altercation to his supervisor, "was not allowed back in the area . . . since I was involved in the incident," and therefore was not responsible for

monitoring Burns's decontamination shower.  On this record, Eaton is entitled to qualified immunity for multiple reasons.

***B. Cpl. White.***  Burns's prison grievance did not name White as a person involved, nor did it allege that he was prevented from washing off the pepper spray. However, his amended complaint added Cpl. White as a defendant, alleging that she witnessed the entire incident and was deliberately indifferent to Burns's medical needs when she followed Sgt. Eaton's instruction to prevent Burns from rinsing off the pepper spray.

As amended by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) requires that inmates exhaust prison grievance procedures before bringing § 1983 suits related to prison conditions.  "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).  Unlike the Michigan prison policy at issue in Jones, 549 U.S. at 218, ADC Administrative Directive 09-01, expressly provided:

> Grievances must specifically name each individual involved for a proper investigation and response to be completed by ADC.  Inmates must fully exhaust the grievance prior to filing a lawsuit.  Inmates who fail to name all parties during the grievance process may have their lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties.

The district court granted summary judgment dismissing Burns's claims against Cpl. White for failure to exhaust because Burns's grievance did not name Cpl. White. Recognizing that "the PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits," Hammett v. Cofield, 681 F.3d 945, 947 (8th Cir. 2012), the district court nonetheless concluded that the failure to name Cpl. White in the grievance was not a mere procedural flaw, "given that Burns also failed to include in his grievance papers his allegations that White . . . witnessed

the incident of which he complains, failed to intervene, and turned the shower water off so that Burns could not rinse off the pepper spray."

On appeal, relying on <u>Hammett</u>, Burns argues his claims against White were exhausted because the ADC denied his pepper spray grievance on the merits. Like the district court, we disagree. In <u>Hammett</u>, we held that a § 1983 claim is exhausted

> when an inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits, even if the decision-maker could have declined to reach the merits because of one or more procedural deficiencies. A complete administrative record exists, and a reviewing court will have the benefit of the agency's institutional perspective.

681 F.3d at 947-48. In this case, Burns did not name White or complain that he was not allowed to wash off the pepper spray. In the grievance process, ADC obtained an incident report from White regarding the complaint against Eaton, and ADC decided only the merits of that grievance. ADC was not asked to evaluate the conduct of White or the distinct § 1983 claims first asserted by Burns in his amended complaint. Although Eaton and White were both involved in the incident, they had different responsibilities and took different actions. Thus, this was not a case where "prison officials decline[d] to enforce their own procedural requirements and opt[ed] to consider otherwise-defaulted claims on the merits." <u>Reed-Bey v. Pramstaller</u>, 603 F.3d 322, 325 (6th Cir. 2010). Rather, the amended complaint against White asserted "a new grievance . . . completely unexhausted." <u>King v. Iowa Dept. of Corr.</u>, 598 F.3d 1051, 1053 (8th Cir.), <u>cert. denied</u>, 131 S. Ct. 499 (2010). The district court properly dismissed the claims against Cpl. White for failure to exhaust.

The judgment of the district court is affirmed.

_____