# United States Court of Appeals
## For the First Circuit

No. 18-1727

FRANK STAPLES,

Plaintiff, Appellant,

v.

RICHARD GERRY, Warden, New Hampshire State Prison, Defendant, in
both his individual and official capacities, WILLIAM WRENN,
Commissioner of the New Hampshire Department of Corrections,
Defendant, in both his individual and official capacities,
JEFFREY BROWN, New Hampshire Parole Board, Defendant, in both
his individual and official capacities, DONNA SYTEK, New
Hampshire Parole Board, Defendant, in both her individual and
official capacities, MARK FURLONE, New Hampshire Parole Board,
Defendant, in both his individual and official capacities, JAMES
DALY, Chaplain of the New Hampshire State Prison, Defendant, in
both his individual and official capacities, KIM LACASSE,
Director of classifications at the New Hampshire State Prison,
Defendant, in both her individual and official capacities,
JOSEPH MICHAUD, Correctional Officer at the New Hampshire State
Prison, Defendant, in both his individual and official
capacities, RONALD GAGLIARDI, Correctional Officer at the New
Hampshire State Prison, Defendant, in both his individual and
official capacities, JON FOUTS, Head of Security at New
Hampshire State Prison, Defendant, in both his individual and
official capacities, CHRISTOPHER KENCH, Correctional Officer at
the N.H. State Prison, Defendant, in both his individual and
official capacities, LEO DEUSAULT, Correctional Officer at the
New Hampshire State Prison, Defendant, in both his individual
and official capacities, PAUL CASCIO, Correctional Officer at
the New Hampshire State Prison, Defendant, in both his
individual and official capacities, MARC MILLER, Correctional
Officer at the New Hampshire State Prison, Defendant, in both
his individual and official capacities, MICHAEL EDMARK,
Correctional Officer at the New Hampshire State Prison,
Defendant, in both his individual and official capacities, SCOTT
MARSHALL, Correctional Officer at the New Hampshire State
Prison, Defendant, in both his individual and official
capacities, JOSEPH DIAMENT, Correctional Officer at the New

Hampshire State Prison, Defendant, in both his individual and official capacities, MARC THERIAULT, Correctional Officer at the New Hampshire State Prison, Defendant, in both his individual and official capacities, PAUL COURCHESNE, Correctional Officer at the New Hampshire State Prison, in both his individual and official Defendant, in both his individual and official capacities, ROBERT PARENT, Correctional Officer at the New Hampshire State Prison, Defendant, in both his individual and official capacities.

Defendants, Appellees.

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

———————

Before

Lynch, Thompson, and Barron,
Circuit Judges.

———————

Donna J. Brown, with whom Wadleigh, Starr & Peters, P.L.L.C., was on brief, for appellant.
Francis C. Fredericks, Senior Assistant Attorney General, with whom Gordon J. MacDonald, Attorney General, was on brief, for appellees.

———————

April 24, 2019

———————

**BARRON**, **Circuit Judge**.  This appeal concerns three claims that a New Hampshire State Prison ("NHSP") inmate brought against two of the prison's officers in a lawsuit under 42 U.S.C. § 1983 alleging violations of his federal constitutional rights. The inmate alleges in the first of these claims that, in 2013, one of the officers pushed him against a pillar, allegedly causing him to hit his head on it, in violation of the Eighth Amendment.  The inmate alleges in the other claims that, in 2015, the other officer sprayed pepper spray into his cell, in violation of both the First Amendment and the Eighth Amendment.  The officers moved for summary judgment on those claims based on qualified immunity.  The District Court granted the motion, and the inmate appealed.  We affirm.

## I.

The plaintiff is Frank Staples, a NHSP inmate at all relevant times.  The defendants are two NHSP corrections officers, Robert Parent and Scott Marshall.  The following facts are not in dispute, except where expressly noted otherwise.

In November 2011, Staples was transferred from a New Hampshire county prison to the Special Housing Unit ("SHU") of the NHSP, a facility run by the New Hampshire Department of Corrections ("NHDOC").  Around that same time, Staples started practicing Taoism, including the Taoist practice of growing long hair.

- 3 -

NHDOC policy set a one-fourth inch limit on facial hair length that was enforced in all units except the SHU. Staples grew a lengthy beard between November 2011 and September 2013.

In September 2013, NHDOC staff decided to transfer Staples from the SHU to the Close Custody Unit ("CCU"), which did enforce the NHDOC facial hair policy. CCU staff escorted Staples and five other inmates to the office area of the CCU for intake. Parent, a sergeant in the CCU, ordered Staples to trim his beard. Staples became visibly upset and refused to shave. Parent asked Staples to fill out a written statement form.

The parties dispute what Parent said when he handed Staples the form. The government claims that Parent asked Staples to explain why he was refusing to enter the CCU. Staples claims that Parent actually asked Staples, "[t]ell me why you want to be PC." Staples contends that "PC" is short for "protective custody," a label associated with "snitch[es]" and "sex offender[s]" that could put Staples in a dangerous position with other inmates.

The parties agree that Staples took the form and tore it in half. At the moment at which Staples tore up the form, Staples was within "arms' reach" ("three to four feet") of Parent. Parent then swiftly pushed Staples against a support pillar in the office in order to restrain him. Another officer, Robert Leitner, then handcuffed Staples.

Staples claims that Parent "took [his] arm and threw it behind [him] and pushed" him and "slammed him face first into [the] cement pillar." Parent claims that he was not holding Staples's arm but only the "center of his back" and that "the front of [Staples's] body was pressed up against the pillar," but that "Staples'[s] head did not make any contact with the pole."

A different officer escorted Staples to an isolation cell. Video footage of the search conducted of Staples upon entering the cell shows Staples without any obvious marks on his forehead and without any obvious signs of discomfort.

Pursuant to NHDOC policy, Staples was offered medical attention, which Staples accepted. Officers escorted Staples to the NHSP Health Services Center. Staples reported bilateral wrist tingling and intermittent lower back and shoulder pain. A nurse examined Staples and concluded that Staples's wrist functioning "was within normal limits" and reported that she "did not observe any visible sign of injury, such as redness or bruising, to Inmate Staples'[s] wrists, back, head, or shoulder." The nurse "did not recommend that Inmate Staples receive any follow up medical care as [she] saw no indication that continued care was necessary."

On December 13, 2014, Staples filed a lawsuit detailing his disputes with NHSP officers relating to the NHDOC facial hair policy and seeking damages. On December 24, 2014, Staples received a "Hurt Feelings Report" that was slipped under his cell door.

- 5 -

The "Hurt Feelings Report" is a mock form that allegedly purports to "assist whiners in documenting hurt feelings," and suggests that a person who complains is a "sissy," "candy-ass," and a "wimp." Staples was allegedly told by other officers that Marshall had arranged for Staples to receive the document, and Marshall allegedly later asked Staples, "[O]h, did you get that?" in reference to the document. Marshall does not admit to sending Staples the Hurt Feelings Report or to making the comment in reference to it.

In July 2015, NHDOC staff decided to move Staples from the "D-tier" in the SHU to the "I-tier" in the same unit. Staples viewed the transfer to "I-tier" as punitive.

Officers David Dionne and Kory McCauley unsuccessfully attempted to get Staples to leave his cell to complete the move. The two officers then met with Marshall, the SHU sergeant, to determine how to effectuate the move. Marshall ordered them to try to get Staples's voluntary compliance with the move by talking to Staples again during their next rounds. Dionne did so, and Staples again refused. Dionne again conferred with Marshall. Marshall made the decision to use pepper spray to extract Staples from his cell if Staples continued to refuse to leave.

NHDOC policy permits the use of pepper spray to obtain an inmate's compliance with an order to leave his cell. When pepper spray is used, the NHDOC policy requires officers to warn

the inmate of its use, videotape its use, and offer the inmate medical attention promptly after.

Marshall approached Staples in his cell and ordered Staples to "cuff up" several times. A "cuff up" is when the inmate places his hands through the cell's tray slot so the officer can handcuff him before opening the cell door. Staples refused. Marshall then left the tier to get the pepper spray, a camera, and Officers Dionne and McCauley.

Marshall, Dionne, and McCauley returned to Staples's cell. McCauley turned the camera on and began recording. Marshall warned Staples: "I am giving you a direct order or you are going to be sprayed." Staples replied: "[S]pray me, tase me, do whatever the fuck you want."

Marshall then sprayed the pepper spray into the cell through the tray slot using a cone nozzle, which produces a mist, for approximately nine seconds. To protect himself from the spray, Staples turned around and covered his face with a blanket.

Staples remained in the cell. Less than ten minutes later, Dionne returned to the cell and offered Staples medical attention, to which Staples responded: "I'm fine, this shit doesn't bother me." According to Staples, he refused medical attention because he did not want to come out of his cell to receive it. Shortly thereafter, Dionne escorted a nurse into Staples's cell who examined Staples and deemed him medically cleared.

About ninety minutes later, Marshall returned to Staples's cell and offered to move Staples to "H-tier" instead of "I-tier." Staples agreed. Staples then complied with Dionne's order to "cuff up." Dionne offered Staples a shower, which he accepted.

In June 2016, Staples brought suit under 42 U.S.C. § 1983 alleging multiple constitutional and statutory claims against twenty NHSP officials in the United States District Court for the District of New Hampshire. The defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The District Court dismissed most of the plaintiff's claims, except for the claim that Parent had violated the Eighth Amendment by using excessive force against him and the claims that Marshall had violated the First Amendment and the Eighth Amendment by using pepper spray against him. After discovery on these three remaining claims, the defendants moved for summary judgment on the ground that they were entitled to qualified immunity. The District Court granted the defendants' motions. The plaintiff appealed.

**II.**

We review the grant of summary judgment de novo. See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 558 (1st Cir. 2010). In undertaking that review, we "draw[] all reasonable inferences in favor of the non-moving party while ignoring 'conclusory allegations, improbable inferences, and unsupported

speculation.'"  Shafmaster v. United States, 707 F.3d 130, 135 (1st Cir. 2013) (quoting Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 325 (1st Cir. 2009)).

We may affirm only if the record reveals "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "a reasonable jury could resolve the point in favor of the nonmoving party."  Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009) (quoting Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000)).

In granting the defendants' motion for summary judgment on qualified immunity grounds, the District Court relied on the first prong of the qualified immunity analysis.  That prong concerns whether "a plaintiff plead[ed] facts showing . . . that the official violated a statutory or constitutional right." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The District Court concluded that no reasonable jury could conclude from the record that Parent had violated the Eighth Amendment or that Marshall had violated the First Amendment or Eighth Amendment.  On appeal, Staples contends that the District Court erred in construing the

record because it reveals a "genuine dispute" as to whether the defendants violated those constitutional provisions.

### III.

We begin with Staples's Eighth Amendment claim against Parent for pushing him against the pillar in the CCU. "A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components -- one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009) (citing Hudson v. McMillian, 503 U.S. 1, 7-8 (1992); Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999)).

To prevail on the objective prong, Staples must show that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Hudson, 503 U.S. at 8 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The subjective prong turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1986) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), cert. denied sub nom. John v. Johnson, 414 U.S. 1033 (1973)). The "factors" that "are relevant to that ultimate determination" include "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials," "the need for the

- 10 -

application of force," "the relationship between the need and the amount of force that was used," "the extent of the injury inflicted," and "any efforts made to temper the severity of a forceful response." Id. at 321 (citations and internal quotation marks omitted).

The District Court, reaching only the subjective prong of the inquiry, concluded that the record compelled the conclusion that Parent had acted "in a good-faith effort to maintain or restore discipline" and therefore without "malicious[] and sadistic[]" intent. Hudson, 503 U.S. at 7. On appeal, Staples contends that "the District Court failed to consider evidence from which a jury could conclude that Parent's use of force was planned, sadistic and unnecessary." But, we do not agree.

Parent testified that he was prompted to use the force at issue because he was "surpris[ed]" when Staples "aggressively ripped [the form] up." Parent testified that he thus immediately "put [Staples] against the wall to be handcuffed" "[b]ecause that was . . . an unusual incident and [he] took control of it as quickly as [he] possibly could."

Staples does not dispute that his "defiance of [Parent's] order[s]" by ripping up the statement form "could reasonably be thought to present a threat to" Parent's safety. Whitley, 475 U.S. at 323-24; see also Stenzel v. Ellis, 916 F.2d 423, 426 (8th Cir. 1990) ("When a prisoner, having been warned

- 11 -

three times, refuses to comply with a legitimate jail security regulation, the incident has escalated into a 'disturbance . . . that indisputably poses significant risks to the safety of inmates and prison staff.'" (quoting Whitley, 475 U.S. at 320)). Thus, this case is not one in which a reasonable jury could conclude, even on the officer's own account of why force was needed, that it was wanton based on an inference that there was no "need for the application of force." Whitley, 475 U.S. at 321.

Nor could a reasonable jury infer from the undisputed record that "the relationship between the need and the amount of force that was used" supports a finding that the use of force was wanton. Id. Staples conceded during his deposition that Parent restrained him in "one quick movement." See, e.g., Wright, 554 F.3d at 270 (relying on concession made in plaintiff's deposition testimony). And, while the parties disagree as to whether Staples in fact hit his head against the pillar, Staples admitted that he hit his head "in the course of [Parent] pushing [him] to the pole" and that Parent did not "grab[] his head and slam[] it into the pole." See, e.g., Guitron v. Paul, 675 F.3d 1044, 1046 (7th Cir. 2012) (finding that officer did not act "maliciously and sadistically" where he "twisted" inmate's wrist and "slammed" him into a wall because the officer "did not use any force until [the inmate] disobeyed a command that was designed to maintain order

within the prison; and, when [the officer] applied modest force, [the inmate] remained defiant").

Staples does point to what he contends was Parent's statement during the incident, "[t]ell me why you want to be PC," when he handed him the statement form. Staples also points to what he contends was Parent's subsequent admission to him, in a conversation shortly after the CCU incident, that Parent "knew [Staples] wasn't going to shave" and the "whole PC thing . . . was [his] plan to try to get [Staples] to shave."

But, even crediting Staples's testimony that Parent made these statements, they at most show that Parent wanted to pressure Staples into shaving. Neither statement suffices to permit a reasonable jury to find that Parent pushed Staples into the pillar for a reason other than the one that Parent gave -- namely, that Staples posed a security risk at the time of the push due to his defiant act of ripping up the statement form. In fact, beyond "general attacks upon the defendant's credibility," Staples points to no "affirmative evidence," Crawford-El v. Britton, 523 U.S. 574, 600 (1998), that could suffice to rebut Parent's deposition testimony that he was prompted to use force to "t[a]ke control" of

the situation when Staples "aggressively ripped [the statement form] up."[1]

We thus conclude that "the evidence, viewed in the light most favorable to the plaintiff, [does not] support a reliable inference of wantonness in the infliction of pain." Whitley, 475 U.S. at 322. Accordingly, we affirm the District Court's grant of summary judgment to Parent on this claim.

**IV.**

We turn, then, to Staples's First Amendment and Eighth Amendment claims against Marshall for using pepper spray against him. We start with the First Amendment retaliation claim.

**A.**

To make out a prima facie case of First Amendment retaliation, Staples must demonstrate that: (1) he engaged in an activity protected by the First Amendment; (2) Marshall took an adverse action against him; and (3) there is a causal link between the protected activity and the adverse action. See Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). The government concedes, for the purposes of this appeal, that Staples's suit challenging

---

[1] To the extent that Staples means to argue that Parent's alleged attempt to label him as a "PC" inmate constitutes an independent use of force that is also actionable under the Eighth Amendment, Staples did not make this argument in any developed manner below. See United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002) ("[A] waived issue ordinarily cannot be resurrected on appeal.").

NHDOC's facial hair policy is protected activity under the First Amendment and that the use of pepper spray on an inmate is adverse in the context of retaliation. "The heart of the matter, therefore, is the third element of the prima facie case: the presence or absence of a causal link between the protected activity undertaken by the plaintiff and the adverse action that he experienced." Id. at 49.

To make out the third element of the prima facie case, Staples must show that his protected activity "was a substantial or motivating factor for the adverse [action]." Padilla-García v. Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000). Even if Staples succeeds in making that showing, however, the government may "still prevail[] by showing that [Marshall] would have reached the same decision in the absence of the protected conduct." Crawford-El, 523 U.S. at 593 (citing Mt. Healthy City Bd. of Ed. v. Doyle, 429 U.S. 274, 287 (1977)); see also Padilla-García, 212 F.3d at 74; McCue v. Bradstreet, 807 F.3d 334, 338 (1st Cir. 2015).

The District Court concluded that "even if the evidence [that Staples] cites is minimally sufficient to establish that Marshall was angry with Staples for filing the 2014 lawsuit, the other undisputed evidence . . . leaves no doubt that [Marshall] would have taken the same action regardless of any retaliatory motive." We need not decide whether the District Court was correct in this respect, because we conclude that Staples has not met his

- 15 -

burden to show that a reasonable jury could conclude from this record that his protected activity was a "substantial or motivating factor" for Marshall's decision to use pepper spray against him. Padilla-García, 212 F.3d at 74.

To argue otherwise, Staples points out that he had filed the prison lawsuit in December 2014, seven months before Marshall's use of pepper spray in July 2015. And, as evidence of Marshall's animus toward Staples for filing the suit, Staples points to Marshall's alleged sending of the "Hurt Feelings Report" in December 2014, shortly after Staples had first filed the suit against the prison and to Marshall's earlier alleged comment to him in September 2013 that "I can't wait to see what that face looks like without a beard" in connection with his move to the CCU. Staples also points to motions that he filed in the lawsuit a week before Marshall used the pepper spray.[2] "[This] chronology

---

[2] We note that the record contains no evidence that Marshall was aware of any motion filed in the lawsuit -- let alone that particular motion -- prior to his use of the pepper spray. See Ambrose v. Twp. of Robinson, Pa., 303 F.3d 488, 493 (3d Cir. 2002) ("It is only intuitive that for protected conduct to be a substantial or motiving factor in a decision, the decisionmakers must be aware of the protected conduct."). The government also points out that the lawsuit involved frequent filings by Staples, which generated more than 140 docket entries over the span of a year.

of events," Staples contends, "gives rise to an inference of retaliation." Hannon, 645 F.3d at 49.

But, the record "points to another explanation" for Marshall's decision to use pepper spray -- Staples's multiple refusals to leave his cell in the days before Marshall's use of pepper spray -- "that is so obviously correct as to render the charge of improper motivation implausible." Maloy v. Ballori-Lage, 744 F.3d 250, 253 (1st Cir. 2014); cf. Micheo-Acevedo v. Stericycle of Puerto Rico, Inc., 897 F.3d 360, 366 (1st Cir. 2018), cert. denied, 139 S. Ct. 1297 (2019) (noting, in the employment context, that "proximity in timing does not alone suffice to create a genuine issue of material fact as to [causation]" where the plaintiff's "own unprotected conduct readily explains the timing of . . . the adverse . . . action[]"); Bonilla-Ramirez v. MVM, Inc., 904 F.3d 88, 96 (1st Cir. 2018) (same).

Here, Marshall testified that his "plan" was "[t]o use the OC [spray] . . . to get [Staples] to cuff up and come out of his cell." Consistent with Marshall's testimony, Staples testified that he refused the orders to cuff up, that he expected Marshall to "assemble a team and do an extraction" in response to his refusals, and that he told Marshall to "spray me, tase me, do whatever the fuck you want" immediately after Marshall warned him that pepper spray would be used if he continued to refuse to comply. Thus, Staples does not contest that the conduct that

- 17 -

Marshall identified as supplying the "justification for using the pepper spray against [him]" -- namely, Staples's refusal to cuff up and to leave his cell -- in fact took place. Stallworth v. Tyson, 578 F. App'x 948, 951 (11th Cir. 2014) (per curiam).

Nor does Staples contend that Marshall orchestrated the plan to move Staples to a different cell in order to create an excuse to use pepper spray against him.[3] Cf. id. (concluding that genuine dispute existed as to whether an officer "in fact responded to [plaintiff's] attempt to hurt himself with a razor" where plaintiff averred that the officer "set up" plaintiff by throwing the razor into the plaintiff's cell). In fact, the undisputed record shows that Marshall did not single Staples out for the use of pepper spray. Cf. Saleh v. Upadhyay, 11 F. App'x 241, 257 (4th Cir. 2001) (per curiam) (finding genuine issue as to causation where the adverse action was taken only against one of six similarly situated employees and the employer "presented no evidence to justify the decision to single out [the plaintiff] for [the adverse] treatment"). Rather, Marshall testified that he had, pursuant to prison policy, used pepper spray on inmates "six to 10" times before. And, Staples points to no contrary evidence

---

[3] Staples does not contend that the move to I-tier was itself the adverse action for purposes of the First Amendment retaliation claim.

- 18 -

"that would support an inference of differential treatment." Air
Sunshine, Inc. v. Carl, 663 F.3d 27, 37 (1st Cir. 2011).

Staples does try to make the case that Marshall
"deviat[ed] from standard operating procedures" in using the
pepper spray. Hannon, 645 F.3d at 49. But, the record shows that
NHDOC Policy and Procedure Directive 5.58 authorizes officers to
use pepper spray after "verbal directives fail to result in an
inmate's compliance with officers' commands," including "after
[an] inmate has indicated his refusal to leave [his] cell and is
not complying with staff orders." When an officer employs pepper
spray for such a purpose, NHDOC policy requires the officer to
warn the inmate prior to using the spray, to videotape the use of
the spray, and to disengage and consider other options if the use
of the spray does not result in the inmate's compliance. It is
undisputed that Marshall complied with these requirements. See
Air Sunshine, 663 F.3d at 36 (rejecting plaintiff's First Amendment
retaliation claim where there was no basis to conclude that "the
relevant procedures were not followed by [the defendant]").

Staples does contend that Marshall violated NHDOC policy
by not first attempting to physically extract Staples before
resorting to the use of pepper spray. But, an officer -- unnamed
in the suit and certified by New Hampshire Police Standards and
Training in the use of pepper spray -- declared in an affidavit
that, under NHDOC policy, "a physical cell extraction is typically

- 19 -

viewed as a last resort means of gaining an inmate's compliance with leaving a cell" and that pepper spray is viewed as "a minimal use of force." Staples points to nothing in the record to rebut this competent evidence besides his own speculative testimony that NHDOC policy requires officers to first attempt a physical extraction. See Hannon, 645 F.3d at 49 ("[A]ffidavits and deposition testimony are effective in opposing summary judgment only when they are given on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify about the matter in question.").

Thus, we affirm the District Court's grant of summary judgment to Marshall on Staples's First Amendment retaliation claim. We turn, then, to Staples's separate claim that Marshall's use of pepper spray violated the Eighth Amendment.

**B.**

"[A]lthough it is not per se unconstitutional for guards to spray mace at prisoners confined in their cells, it is necessary to examine the 'totality of the circumstances, including the provocation, the amount of [spray] used, and the purposes for which the [spray] is used [to] determin[e] the validity of the use of [spray] in the prison environment.'" Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996) (quoting Bailey v. Turner, 736 F.2d 963, 969 (4th Cir. 1984)). Here, as we have explained, Marshall testified that he used pepper spray for a "valid[]" "purpose" -- to

extract Staples from his cell -- in response to a "valid[]" "provocation" -- Staples refusing multiple orders over several days to leave his cell.  Id.

The record amply supports that testimony, and the evidence of Marshall's prior comments to Staples concerning his beard do not suffice to permit a reasonable jury to conclude that Marshall acted for a reason other than the one that he gave.  See Skinner v. Cunningham, 430 F.3d 483, 488 (1st Cir. 2005) (finding no Eighth Amendment violation where an "extraction team sprayed a non-lethal chemical irritant (derived from cayenne pepper) into the cell to make [plaintiff] exit the cell without direct physical force"); Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979) (holding "that use of [tear gas] in small amounts may be a necessary prison technique if a prisoner refuses after adequate warning to move from a cell"); Allen v. Bosley, 253 F. App'x 658, 659 (9th Cir. 2007) (finding the use of pepper spray permissible after inmate "refused to comply with orders to submit to standard handcuffing procedure and attempted to block a cell extraction team from entering his cell"); Rodriguez v. Elmore, 407 F. App'x 124, 126 (9th Cir. 2010) (mem.) (same); cf. Torres-Viera v. Laboy-Alvarado, 311 F.3d 105, 108 (1st Cir. 2002) (granting officers qualified immunity where they used tear gas to "respond[] to a security disturbance"); Passmore v. Ianello, 528 F. App'x 144, 148 (3d Cir. 2013) (per curiam) (holding that "the use of pepper spray

- 21 -

was reasonable" where defendant "refused to present himself for a mandatory shower at least nine times" before the use of the spray).

Nor does the "amount of [spray] used" by Marshall suffice in and of itself to permit a reasonable jury to infer wantonness. Williams, 77 F.3d at 763 (internal quotation marks omitted). The undisputed record shows that Marshall used a cone nozzle that produced a mist instead of a harsher stream of pepper spray, that Marshall directed the pepper spray into Staples's cell and not at Staples's person, that Marshall sprayed the pepper spray into the plaintiff's cell for approximately nine seconds, and that Staples was promptly offered a shower and medical attention after the incident. This case is thus not like those cases on which Staples relies "where . . . summary judgment in Eighth Amendment excessive force claims based on pepper spraying" was denied. Burns v. Eaton, 752 F.3d 1136, 1140 (8th Cir. 2014). The officers' use of pepper spray in those cases "involved no warning th[e] force would be used, no apparent purpose other than inflicting pain, use of unnecessary 'super-soaker' quantities of the chemical, refusal to allow the victim to wash off the painful chemical for days, and/or use of additional physical force" and therefore permitted an inference of wantonness. Id. (citing Walker v. Bowersox, 526 F.3d 1186, 1189 (8th Cir. 2008); Treats v. Morgan, 308 F.3d 868, 873 (8th Cir. 2002); Lawrence v. Bowersox, 297 F.3d 727, 730, 732 (8th Cir. 2002)).

- 22 -

**V.**

For the foregoing reasons, we <u>affirm</u> the District Court's grant of summary judgment to the defendants on the plaintiff's First Amendment and Eighth Amendment claims. Each party shall bear its own costs.